2-00-0734

No. 2--00--0734 

IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

TODD M. GIBSON and ) Appeal from the Circuit Court 

LISA M. GIBSON, ) of Kane County.

)

Plaintiffs-Appellees, ) 

) 

v. ) No. 99--CH--0554
 

) 

BELVIDERE NATIONAL BANK AND ) 

TRUST COMPANY, as Trustee of ) 

Trust No. 1876, ) 

) 

Defendant )

)

(Anthony Capasso and Beverly ) Honorable

Capasso, Defendants- ) Patrick J. Dixon,

Appellants). ) Judge, Presiding. 

JUSTICE McLAREN delivered the opinion of the court:

Following a bench trial, the court allowed plaintiffs, Todd and Lisa Gibson, to rescind a contract to purchase real estate from defendants, Anthony and Beverly Capasso.  Defendants appeal a portion of the amended judgment order that required plaintiffs to pay defendants for the time plaintiffs occupied the premises.  Defendants argue that the trial court miscalculated the amount plaintiffs owed.   

Plaintiffs filed a four-count amended complaint against defendants.  Plaintiffs had contracted to buy a house from defendants and alleged that defendants misrepresented the property's size.  Count I sought rescission of the contract, count II alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et
 
seq
. (West 2000)), count III alleged fraud, and count IV alleged breach of contract.  Defendants counterclaimed against plaintiffs, arguing that plaintiffs had failed to make payments under the agreement for deed and had failed to pay for personal property they were purchasing from defendants.  Defendants also alleged that plaintiffs had committed waste to the property.  

The trial court ordered the contract rescinded based on a reasonable mistake regarding the amount of acres actually conveyed.  The court stated in the order that the parties executed an agreement for deed on January 29, 1999.  The court ordered plaintiffs to deliver possession of the property to defendants, pay defendants $42,504 for plaintiffs' use of the property "through May 31, 2000," and pay defendants $2,400, the balance due for personal property plaintiffs purchased from defendants.  The court then ordered defendants to pay plaintiffs $66,065.63, which represented the $64,615.46 plaintiffs paid to defendants for the purchase of the property and the $1,450.17 paid by plaintiffs for improvements on the property.  The trial court's order did not provide a final figure that defendants were required to pay plaintiffs in light of the offsetting figures.  The court dismissed counts II, III, and IV of the amended complaint and count I of the counterclaim, except as to the agreement to purchase personal property.  The court allowed defendants to withdraw count II of the counterclaim.  The court entered this judgment on April 25, 2000.  

Both sides filed timely postjudgment motions.  On April 28, 2000, plaintiffs moved for reconsideration.  Plaintiffs alleged that the court miscalculated the amount they should have to pay for using the property, stating that they delivered possession of the property to defendants on March 24, 2000, earlier than the May 31, 2000, date provided for in the trial court's judgment.  Thus, plaintiffs sought a reduction of the amount they owed defendants for the use of the premises, stating that they should have to pay for the use of the property for 9 months and 24 days, rather than 12 months. 

On May 3, 2000, defendants moved to amend the judgment.  Defendants asked the court to vacate its rescission order.  In the alternative, defendants argued that the trial court erred by ordering defendants to pay plaintiffs $1,450.17 for improvements made by plaintiffs to the property at issue.  In addition, defendants asked the court to recalculate the amount due to defendants for rent by adding an additional $668 a month for property taxes.  Defendants also filed a petition for attorney fees.

On May 12, 2000, the trial court disposed of the parties’ motions.  The trial court amended the original judgment order, granting plaintiffs' request to reduce the amount of rent owed from 12 months to 10 months.  The trial court denied defendants' motion except for the request for "an adjustment of the rental amount to reflect the obligation of taxes."  The trial court then entered judgment in plaintiffs’ favor and against defendants in the amount of $21,961.63.

 On May 18, 2000, defendants moved to reconsider and vacate the second judgment entered May 12, 2000.  Defendants argued that the trial court erred by calculating rent and taxes for 10 months instead of 14 months.  Defendants argued that plaintiffs occupied the property  from January 20, 1999, through or about March 31, 2000.  Defendants also argued, again, that the trial court erred by ordering defendants to pay plaintiffs $1,450.17 for improvements plaintiffs made to the property.  The trial court denied defendants’ motion on June 19, 2000.  On June 26, 2000, defendants filed their notice of appeal, contesting in part, the judgments entered May 12, 2000, and June 19, 2000.

Initially, we must determine whether we have jurisdiction to decide this appeal.  The parties did not raise this issue in their  initial briefs to this court.  However, we are always mindful that this court has an independent duty to consider our jurisdiction before considering the merits of any case.  See 
Almgren v. Rush-Presbyterian-St. Luke’s Medical Center
, 162 Ill. 2d 205, 210 (1994). Thus, given the multiple posttrial motions 
and judgments
, we requested the parties to file supplemental briefs addressing the issue of jurisdiction.  

It is well settled that a timely notice of appeal is jurisdictional.  
Childers v. Kruse
, 297 Ill. App. 3d 70, 73 (1998).  Supreme Court Rule 303(a)(1) provides that a notice of appeal must be filed within 30 days of the 
final judgment
 or, "if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion."  155 Ill. 2d R. 303(a)(1).  A 
final judgment
 is one that disposes of the rights of the parties with regard to the entire controversy or a definite and separate part thereof.  
Dubina v. Mesirow Realty Development, Inc.
, 178 Ill. 2d 496, 502 (1997).

 Here, there were two judgments, one on April 25, 2000, that was superseded by the second judgment, entered on May 12, 2000.  This May 12, 2000, judgment finally determined and disposed of the rights of the parties and, thus, was a final judgment for purposes of Rule 303.  Defendants filed one timely posttrial motion directed against the May 12, 2000, judgment, and this motion was disposed of by the trial court on June 19, 2000.  Thus, according to Supreme Court Rule 303(a)(1), defendants had 30 days from the entry of this June 19, 2000, order confirming the second final judgment to file their notice of appeal.  Because defendants filed their notice of appeal seven days after the order disposing of the only postjudgment motion directed at the only extant final judgment, their appeal is timely, and we have jurisdiction to consider the merits of this case.

We take notice of Supreme Court Rule 303(a)(2), which  provides that "[n]o request for reconsideration of a ruling on a post-judgment motion will toll the running of the time within which a notice of appeal must be filed."  155 Ill. 2d R. 303(a)(2). However, this rule does not apply here, where there were 
two
 judgments 
and
 defendants' second postjudgment motion did not seek 
reconsideration of a ruling
 on a postjudgment motion; rather, defendants' second postjudgment motion attacked an amended and, thus, the only final, judgment.  

There are at least three alternative dispositions that can arise when the court rules upon a postjudgment motion under Supreme Court Rule 303.  First, the motion may be denied and the final judgment remains intact. 
 
Second, the motion may be granted and the final judgment ceases to exist and a new final judgment arises.  Third, the motion may be granted and the judgment is vacated and a new trial is ordered.  In the first instance, further motions for reconsideration may be filed within 30 days of the denial, but they will not stay the time for filing a notice of appeal.  In the second instance, a postjudgment motion filed in apt time will stay the time for filing a notice of appeal, as it is not a reconsideration of the first final judgment but the first postjudgment motion filed against a new final judgment.  In the third instance, there is no final judgment, and the right to appeal is not
 
from a final judgment under Supreme Court Rule 303 but from an order granting a new trial under Supreme Court Rule 306.  The case at bar presents us with the second example.  Thus, because the second postjudgment motion addressed a new final judgment, the clock was reset and the time to file a notice of appeal started again.

To support its position that defendants' notice of appeal was untimely, plaintiffs cite 
Sears v. Sears
, 85 Ill. 2d 253 (1981), 
Deckard v. Joiner
, 44 Ill. 2d 412 (1970),
  
Bernhauser v. Glen Ellyn Dodge, Inc.
, 288 Ill. App. 3d 984 (1997), and 
Rose v. Centralia Township High School District No. 200
, 59 Ill. App. 3d 606 (1978).  We understand these cases to hold that successive posttrial motions, attacking the only existing
 final judgment, do not toll the time to file a notice of appeal.  Thus, one posttrial motion filed by a party is permitted for each final judgment.  Further, an order that merely denies a posttrial motion is not considered a "final judgment" for purposes of this rule.  Rather, an order denying relief confirms the preceding final judgment.  Thereafter, a second postjudgment motion is, in fact, a request for reconsideration of a ruling as contemplated by Supreme Court Rule 303(a)(2).  These cases do not support the proposition advanced by plaintiffs that the time to appeal is not tolled by the filing of a posttrial motion that attacks a 
successive judgment that becomes the only final judgment
.  In these cases there was only one judgment disposing of the merits of the case.  See
 
Sears
, 85 Ill. 2d at 260 (in one of the cases in this consolidated appeal, the second judgment merely denied a posttrial motion; in the other case, the trial court lacked jurisdiction to render the second judgment and, thus, the second judgment was improper); 
Deckard
, 44 Ill. 2d at 417;  
Bernhauser
, 288 Ill. App. 3d at 988 (the second order merely denied the plaintiff's motion to reconsider);  
Rose
, 59 Ill. App. 3d at 606-07 (the second order merely denied the plaintiff's motion to reconsider).
  In contrast, here, there was a 
second
 judgment that altered the rights of the parties as they were determined in the first judgment.
  
This second judgment became the final judgment.  Thus, these cases are not controlling here.  

We acknowledge that, in cases where a second posttrial motion was deemed to toll the time for a notice of appeal, the courts reasoned that the issues raised in the second posttrial motions could not have been raised in the first posttrial motions.  See, 
e.g.
,  
Jeanblanc v. Mellott
, 152 Ill. App. 3d 801, 809-10 (1987); 
Aetna Life Insurance Co. v. H.W. Stout & Associates, Inc.
, 112 Ill. App. 3d 570, 575 (1983);  
In re Marriage of Viehman
, 91 Ill. App. 3d 315, 319-20 (1980)
.  We also acknowledge that the exception applied in those cases is not present here.  That is, in this case, the issues raised by defendants in their second posttrial motion could have been raised in their first posttrial motion (and in fact one issue was raised in both posttrial motions).  However, contrary to  plaintiffs' contentions, we do not believe that the exception applied in 
Jeanblanc
,
 
Aetna
, and 
Viehman
 is the only circumstance that will toll the time for filing a notice of appeal under Supreme Court Rule 303.  Rather, we believe that, where a trial court amends its initial final order, the clock is reset regarding the filing of posttrial motions attacking this new final judgment and, thus, the time is reset regarding the time for the filing of a notice of appeal.  

We also question the logic of these cases.  Unless there is a new judgment that alters the rights of the parties, there could not be an issue that could not have been addressed in the first postjudgment motion.  We believe these cases engrafted a rationale explaining why only one postjudgment motion is required with a cause that has only one final judgment.  Rather than analyzing the fact that a new final judgment was entered that could alter the parties' rights, these courts looked to an exception to the rationale and made it a rule.  They essentially looked at whether a new issue existed that could not be raised previously.  What they failed to discern was that the new issue arose 
only
 because a new final judgment had been entered.  We believe the prior cases could not see the tree for the twigs, 
i.e.
, could not see the new final judgment because they were focusing on the judgment's constituent parts and the new issues raised in the new final judgment. 

Further, we are mindful that, when interpreting a supreme court rule, we must consider the reasons and necessity for its enactment, the evil to be remedied, and the purpose of the rule.  See 
Hill v. Behr & Sons, Inc.
, 293 Ill. App. 3d 814, 817 (1997).  One of the purposes of Supreme Court Rule 303, that of preventing endless litigation by allowing a losing party to extend the time for appeal indefinitely, is not thwarted by our application of these rules in the case at bar.  In the case before us, we understand the supreme court rule and the holdings of the cases interpreting the rule as simply, for each final judgment, one postjudgment motion will extend the time for appeal.  Other successive postjudgment motions attacking the identical final judgment will not extend the time for filing a notice of appeal.  This application supports "the interests of finality, and of certainty and ease of administration in determining when the time for appeal begins to run."  
Sears
, 85 Ill. 2d at 259.  It also promotes another purpose of Supreme Court Rule 303, that of efficiency, because it allows the trial court to reconsider and correct any defects in the new final judgment before the need for appeal arises.  Accordingly, we determine that we have jurisdiction to consider the merits of this case. 

Defendants argue on appeal that the trial court’s May 12, 2000, judgment rescinding the parties' contract must be amended to reflect the 14 months that plaintiffs had possession of the property.  Plaintiffs argue that the trial court's judgment reflected a lump sum for plaintiff’s possession and was not based on a monthly figure.  We disagree with plaintiffs.

It is well settled that when a court orders a contract to be rescinded, the contract is canceled and the parties must be restored to their status before contracting.  
Majcher v. Laurel Motors, Inc.
, 287 Ill. App. 3d 719, 728 (1997).   To restore the parties to their status before contracting, the purchaser must receive back any consideration paid and the seller must receive back any benefit received by the purchaser.  See 
Majcher
, 287 Ill. App. 3d at 728.

In its April 25, 2000, order, the trial ordered plaintiffs to pay defendants $42,504 for use of the property through May 31, 2000.  Defendants argue and plaintiffs acknowledge in their post judgment motion that this figure represented a monthly payment of $3,542.  Contrary to their previous position, plaintiffs now claim for the first time on appeal that this figure represents a lump sum figure.  However, this argument is not supported by the record. There is nothing in the record supporting a lump sum figure of $42,504.  The record contains no evidence that the lump sum value of the benefit received by the plaintiffs for possession was $42,504.  However, there is support in the record for the monthly value of possession of $3,542.  The record reflects that plaintiffs made three monthly payments to defendants of $3,542.  Multiplying $3,542 by 12 renders the sum of $42,504, the precise amount the trial court ordered plaintiffs to pay defendants for possession of the property.  Thus, the only conclusion that can be drawn from the record is that the trial court found that this was the monthly value of the benefit plaintiffs received for possession of the property.  No other conclusion is supported by the record.  We note that the parties agree that the trial court also ordered plaintiffs to pay defendants for taxes at a rate of $668 a month.  Therefore, the trial court intended plaintiffs to pay defendants $4,210 a month for possession of the property.

This brings us to the crux of the matter, that is, how many months did the trial court intend to order plaintiffs to pay for the possession of the property?  Defendants argue that, since the sale closed on January 29, 1999, and plaintiffs relinquished possession on March 24, 2000, plaintiffs must pay for 14 months.  Although we do not agree that plaintiffs should pay for 14 months, the record reveals that the trial court erred in counting the correct number of months in its calculation.

The record supports the trial court's findings that the sale closed on January 29, 1999, plaintiffs discovered the mistake regarding the size of the property conveyed in March 1999, and they returned possession of the property on March 24, 2000.  The record reveals that plaintiffs lived in the house for one week after closing but then returned to Colorado until March 1999 so that Lisa Gibson could give birth.  Therefore, the fewest months the trial court reasonably could have found that plaintiffs derived a benefit from the property is for 13 months and 24 days.  Accordingly, the trial court abused its discretion by ordering plaintiffs to pay for only 10 months' possession.  The correct figure plaintiffs must pay defendants for possession of the property is $58,261, representing
 
a prorated calculation of "rent" and taxes rounded to the nearest dollar.  

Defendants also assert that it is entitled to a setoff of $2,400 for plaintiffs' purchase of personal property from defendants.  However, because plaintiffs have not received possession of this personal property, defendants are not entitled to a setoff.  This portion of the judgment may be executed when the personal property is delivered to plaintiffs.

Accordingly, we affirm the judgment of the circuit court of Kane County, but modify it as follows:  Defendants owe plaintiffs $66,065.63, representing $64,615.46 as reimbursement for the amounts paid by plaintiffs to defendants and $1,450.17 for improvements plaintiffs made to the property.  Plaintiffs owe defendants $58,261, for the benefit received from possession of the property.  After a setoff of these figures, defendant owes plaintiffs $7,804.63.  

Affirmed as modified. 

O'MALLEY, J. concurs.

JUSTICE CALLUM, dissenting:

Because the majority acts beyond its jurisdiction, I cannot join its opinion.  Defendants' notice of appeal was filed more than 30 days after the court resolved the parties' postjudgment motions and was thus untimely and ineffective to invoke this court's jurisdiction.  Accordingly, we should dismiss the appeal.  Instead, the majority saves the appeal by erasing posttrial practice as it has existed in this state for years and inventing a new rule that is unsupported by any authority.  Indeed, the policy rationale the majority offers
 to support its judicial legislation proves why the majority's new rule is both ill-conceived and unwise.  Therefore, I must respectfully dissent.

The majority's holding is as follows: anytime a trial court makes any modification to its judgment in response to a posttrial motion, the entire judgment is open to a new round of posttrial motions, even those solely raising issues that either have been or could have been raised in the first motion.  This rule is contrary both to the plain language of the supreme court rules and the common law of this state.

SUPREME COURT RULE 303

A timely notice of appeal is jurisdictional.  
Childers v. Kruse
, 297 Ill. App. 3d 70, 73 (1998).  The notice of appeal must be filed within 30 days of final judgment or, "if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion."  155 Ill. 2d R. 303(a)(1).  Importantly, "[n]o request for reconsideration of a ruling on a post-judgment motion will toll the running of the time within which a notice of appeal must be filed."  155 Ill. 2d R. 303(a)(2).

The proper resolution of this case under Rule 303 is simple.  The trial court issued a final judgment on April 25, 2000, and both parties filed timely postjudgment motions.  The court resolved both motions in an order entered on May 12, 2000.  In this order, the court modified its judgment in two respects and otherwise denied the motions.  On May 18, defendants filed a motion to reconsider, raising one issue that they raised in the first motion and one that they could have raised.  The court denied this motion on June 19, 2000, and defendants filed their notice of appeal on June 26. 

Because the court ruled on the postjudgment motions on May 12, 2000, the notice of appeal had to be filed within 30 days of that date.  Defendants apparently believed they could extend the time for appeal by filing a motion to reconsider.  They were mistaken.  Rule 303(a)(2)'s proscription could not be more clear: "No request for reconsideration of a ruling on a post-judgment motion will toll the running of the time within which a notice of appeal must be filed under this rule."  155 Ill. 2d R. 303(a)(2).

Also irrelevant is the fact that the second postjudgment motion was filed within 30 days of the original order.  As we explained in 
Illinois State Toll Highway Authority v. Gary-Wheaton Bank
, 203 Ill. App. 3d 672, 676-77 (1990), the time for appeal is not extended by a successive postjudgment motion filed within 30 days of the original order if the second motion is filed only after the court disposes of the first one. 

Faced with the unmistakably clear language of Rule 303(a)(2), the majority is forced to say that the rule does not apply because the trial court's May 12 order was 
not
 a ruling on a postjudgmnent motion.  The court's order begins, "This cause coming to be heard on plaintiff's motion to reconsider, defendant's motion to reconsider and defendant's motion for fees, due notice having been given, the court being fully advised in the premises[,] it is hereby ordered ***." Following this opening clause are three dispositive rulings on the postjudgment requests.  The trial judge obviously believed that he was ruling on the parties' postjudgment motions, and his order disposed of them.

The majority asserts that, because the court's ruling included a modification of the judgment, there was then a new final judgment.  That may be true, but there is no authority for the proposition that the entire posttrial process began anew.

It has long been the rule that a party is entitled to one posttrial motion.  In jury trial cases, posttrial motions are mandatory to preserve issues for review.  The applicable statute specifically provides that all relief sought after trial must be requested in a single motion.  735 ILCS 5/2--1202(b) (West 2000).  Postjudgment motions are not mandatory following bench trials, but the statute applicable to such motions (735 ILCS 5/2--1203 (West 2000)) has also been interpreted to allow only one motion.  See 
Benet Realty Corp. v. Lisle Savings & Loan Ass'n
, 175 Ill. App. 3d 227, 234 (1988); 
People ex rel. McGraw v. Mogilles
, 136 Ill. App. 3d 67, 71-72 (1985); 
Rose v. Centralia Township High School District No. 200
, 59 Ill. App. 3d 606, 607-08 (1978).

As the Historical and Practice Notes to Rule 303 recognize, when the supreme court added to Rule 303(a)(2) the language relating to reconsiderations of rulings on postjudgment motions, it essentially codified what was already established by case law:

"When subparagraph (a)(2) was adopted, the Court also included language to give expression to the principle that requests for reconsideration of a ruling on a post-trial motion will not toll the running of the time for filing a notice of appeal.  This again was a familiar rule, but one that had continued to cause difficulty and therefore bore repeating.  
It was always the rule that a party was entitled absent some highly unusual circumstances to only one post-trial motion which would serve to extend the time for appeal
."  (Emphasis added.) Ill. Ann. Stat., ch. 110A, R. 303, Historical & Practice Notes, at 94 (Smith-Hurd 1985).  

The majority's holding--that any action of the trial court on a postjudgment motion, other than an outright denial, restarts the entire posttrial process--is an impermissible rewriting of Rule 303(a)(2).  The majority is rewriting the rule to read, "No request for reconsideration of a 
denial
 of a postjudgment motion will extend the time in which a notice of appeal must be filed under this rule."  The rule does not say "denial," it says "ruling," and we have no authority to rewrite the supreme court rules by judicial fiat.  Defendants' request for the court to reconsider its rulings on the postjudgment motions did not extend the time for filing a notice of appeal.

THE COMMON-LAW EXCEPTION

As the majority notes, the appellate court has recognized a  limited exception to the rule against successive postjugment motions when the court modifies its judgment in response to a postjudgment motion and the second motion attacks the modified judgment and raises something that could not have been raised in the previous motion.  See 
Jeanblanc
, 152 Ill. App. 3d at 809-10; 
Aetna
, 112 Ill. App. 3d at 575-76; 
Viehman
, 91 Ill. App. 3d at 319-20.  The rationale of these cases is essentially that a party should have at least one chance to ask the court to reconsider each part of its ruling.

Nevertheless, it should be noted that this exception was created by the appellate court and that a party still proceeds at its own risk by filing a second postjudgment motion.  The Illinois Institute of Continuing Legal Education thus cautions attorneys as follows:

"Successive post-trial motions are not permitted in nonjury cases.  
Sears v. Sears
, 85 Ill. 2d 253 (1981).  A narrow exception to this rule has been recognized when new or additional relief is granted against a party for the first time in an order disposing of a timely filed post-trial motion.  
See
 
Jeanblanc v. Mellott
, 152 Ill. App. 3d 801 (1970); 
Viehman v. Viehman
, 91 Ill. App. 3d 315 (1980); 
Aetna Life Insurance Co. v. H.W. Stout & Associates, Inc.
, 112 Ill. App. 3d 570 (1983).  This exception has not been ruled on by the Supreme Court.  Thus, extreme caution should be used before relying on it."  J. Torshen & A. Spreyer, 
Post-Trial Notions
 in Illinois Civil Practice §14.29, at 14--11 (Ill. Inst. For Cont. Legal Educ. 1997).

Assuming that the
 exception is legitimate, defendants' second postjudgment motion did not fall within it.  Although the trial court modified its judgment in response to the first postjudgment motions, defendants' successive motion attacked the first judgment.   The gravamen of the second postjudgment motion is paragraph four, which provides: 

"The problem with the 
prior order
, and conduct of counsel in adjusting the proper amount, lies in the erroneous premise that Plaintiffs paid Defendants an original down payment of $64,615.46 (
April 25, 2000 Order
, paragraph C).  The undisputed amount paid was $53,990.00 which should have been used for the starting point."  (Emphasis added.) 

Thus, defendants contended in the second motion that the court had used the wrong figure as its starting point in the April 25 order.  As the majority notes, defendants also raised an issue that they had raised in their previous motion.  These issues either were or could have been raised in the first postjudgment motion, and defendants did not extend the time for filing a notice of appeal by raising these issues in a subsequent motion.  See 
Jeanblanc
, 152 Ill. App. 3d at 809-10.

The majority now repudiates the commonsense exception recognized in these cases in favor of a rule with no foundation in the law.  According to the majority, these cases reached the right result for the wrong reason.  Because the court modified its judgment in these cases, the majority asserts, both parties could file new posttrial motions raising any issues they wished, and the time for appeal would be extended until the court disposed of these new motions. 

It has always been the rule, however, that successive redundant posttrial motions are not allowed.   A second motion attacking the original judgment and containing nothing that could not have been raised in the first motion does not extend the time for an appeal.  
Sears
, 85 Ill. 2d at 258; 
Deckard
, 44 Ill. 2d at 418-19; 
Bernhauser
, 288 Ill. App. 3d at 988-89; 
Rose
, 59 Ill. App. 3d at 607.  The majority claims that these cases are inapplicable because they involved a single judgment.  Nevertheless, the court offers no authority that the mere modification of a judgment has a talismanic effect that opens up the entire original judgment to a new round of posttrial attacks.  Curiously, even the majority recognizes this.  The majority states, "Other successive postjudgment motions attacking the identical final judgment will not extend the time for filing a notice of appeal."  Slip op. at 9. Here, the second postjudgment motion attacked the original judgment, and therefore the majority should conclude that it did not extend the time for an appeal.  

The 
Viehman
 line of cases established a reasonable rule that has been the law in this state for 20 years.  We should not repudiate it in favor of a rule that favors successive and redundant postjudgment motions.

POLICY

The majority offers two unpersuasive policy reasons for repudiating 
Viehman
 in favor of a rule that allows redundant successive postjudgment motions.  First, the majority claims that its new rule is consistent with the purposes of Rule 303.  I could not disagree more.  I believe that Rule 303 is designed to promote the finality of judgments and the efficient administration of justice.  The supreme court explained in 
Sears
:

"Permitting successive post-judgment motions would tend to prolong the life of a lawsuit--at a time when the efficient administration of justice demands a reduction in the number of cases pending in trial courts--and would lend itself to harassment.  There must be finality, a time when the case in the trial court is really over and the loser must appeal or give up.  Successive post-judgment motions interfere with that policy.  And justice is not served by permitting the losing party to string out his attack on a judgment over a period of months, one argument at a time, or to make the first motion a rehearsal for the real thing the next month."  
Sears
, 85 Ill. 2d at 259.

The second policy justification the majority offers is even more curious, as it supports the 
Viehman
 rule.  The majority repudiates 
Viehman
 because the new rule "allows the trial court to reconsider and correct any defects in the new final judgment before the need for appeal arises."  Slip op. at 9.  But that was already the rule under 
Viehman
.  Under the 
Viehman
 line of cases, any new matters in the modified judgment could be attacked in a new postjudgment motion.  Thus, as to 
every
 dispositive ruling by the trial court, the losing party had 
one
 chance to ask the court to reconsider.  Under the majority's rule, the modification of the judgment permits the losing party to raise not only new matters in response to the modification but also those already raised or that could have been raised.  The majority permits a modification of a judgment to allow the losing party to file new attacks against the 
previous
 judgment.  Thus, the majority misstates its own holding when it states that, "where a trial court amends its initial final order, the clock is reset regarding the filing of posttrial motions attacking this new final judgment."  Slip op. at 8.  That is the 
Viehman
 rule, not the majority's rule.

In sum, I would not repudiate 
Viehman
 and its progeny.  Those cases have been the law for 20 years and represent a reasonable exception to Rule 303's prohibition against successive postjudgment motions.  I express no opinion on the majority's resolution of the merits of this case, as those issues are not properly before the court.